UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TRACY IRENE KRONTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:10-CV-00454 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Tracy Irene Krontz, who is proceeding *pro se*, appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) Krontz filed an opening brief on April 8, 2011, and the Commissioner responded on July 21, 2011. (Docket # 10, 17.) Krontz, however, has not filed a reply brief, and the time do so has since passed.

For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED for further proceedings in accordance with this Opinion.

### I. PROCEDURAL HISTORY

Krontz was last insured for DIB on December 31, 2006. (Tr. 376); *see Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that she

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

was disabled as of her date last insured in order to recover DIB benefits). Krontz applied for DIB and SSI in April 2004, alleging that she became disabled as of May 16, 2003.[2] (Tr. 18, 45-54, 304, 376.) The Commissioner denied her application initially and upon reconsideration, and Krontz requested an administrative hearing. (Tr. 25-32, 39.) A hearing was conducted by an Administrative Law Judge ("ALJ") on March 21, 2006, at which Krontz, who was represented by counsel at the time, and a vocational expert testified. (Tr. 300-24.) On October 27, 2006, the ALJ rendered an unfavorable decision to Krontz, concluding that she was not disabled. (Tr. 18-24.) The Appeals Council denied Krontz's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 4-14.)

Krontz filed a complaint with this Court on November 29, 2007, seeking relief from the Commissioner's final decision. *See Krontz v. Astrue*, No. 1:07-cv-303, 2008 WL 5062803, at *1 (N.D. Ind. Nov. 24, 2008). On January 12, 2009, the Court reversed the Commissioner's decision and remanded the case to the Commissioner for further proceedings. *Id.* at *8.

Upon remand, a hearing was conducted by ALJ Steven Neary on May 29, 2009, at which Krontz, who appeared *pro se*, and a vocational expert testified. (Tr. 544-63.) On July 23, 2009, the ALJ rendered another unfavorable decision to Krontz, concluding that she was not disabled. (Tr. 376-83.) The Appeals Council denied Krontz's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 325-27.) On November 29, 2007, Krontz filed her second complaint with this Court, seeking relief from the Commissioner's final decision. (Docket # 1.)

---

[2] This is Krontz's second application for disability benefits, as she first applied for benefits in May 2003 but was denied. (Tr. 304.)

2

## II. FACTUAL BACKGROUND[3]

### A. *Background*

At the time of the ALJ's decision, Krontz was thirty-nine years old; had a high school education; and possessed work experience as a factory press operator, nurse's aid, and short order cook. (Tr. 41-44, 60, 69-84, 305-10, 318-20, 382, 548.) Krontz alleges disability due to a number of complaints, including back pain, left arm dysfunction, depression, and fibromyalgia. (Tr. 21, 59, 63, 304, 310, 313, 315.)

At the second hearing, Krontz testified that she lives with her husband and two children, ages sixteen and seventeen. (Tr. 547-48.) She stated that her children help her with household chores, and her husband takes her everywhere she needs to go. (Tr. 556-58.) She elaborated that she can independently perform her bathing and dressing, but does so with some difficulty. (Tr. 556.) Krontz does not go out very often and frequently uses a wheelchair cart when shopping. (Tr. 559.)

Krontz stated that she constantly experiences a "burning sharp pain" in her back, hip, neck, and shoulder. (Tr. 551-53.) She takes medication for the pain, which causes side effects of drowsiness, nausea, and dizziness. (Tr. 552, 559.) Her pain is aggravated by prolonged sitting or standing. (Tr. 550, 553.) She stated that she can sit for only five to ten minutes at a time, stand for ten minutes at a time, and walk one block. (Tr. 553-54, 558.) She also complained of "nerve damage" in her left arm that causes it to feel "very weak" and that she can lift no more than two pounds. (Tr. 554-55.)

---

[3] In the interest of brevity, this Opinion recounts only the portions of the 563-page administrative record necessary to the decision.

3

## B. *Summary of the Relevant Medical Evidence*

Krontz sustained pelvic fractures, right lower leg injuries, and left upper extremity "nerve damage" in a car accident in 1989. (Tr. 131.)

Krontz sought care from Dr. Reed Taylor, a family practitioner, on January 8, 2003. (Tr. 134.) He saw her approximately every three months from at least June 2003 to August 2005. (Tr. 21, 168-97.) Dr. Taylor referred Krontz to Dr. Ann Laidlaw, a specialist in physical, medicine, and rehabilitation, for further evaluation. (Tr. 131, 443.)

Dr. Laidlaw evaluated Krontz on February 24, 2003, for left hip pain that radiated to the thoracic spine, pain in both knees, and intermittent numbness and tingling of her right foot. (Tr. 131-33.) Although she complained of pain, Krontz did not appear in distress, moved about the examination room without difficulty, and exhibited normal strength in her extremities. (Tr. 132.) Her gait, however, was mildly antalgic, and she was tender to palpation of her spine and sacroiliac joints. (Tr. 132.) Dr. Laidlaw diagnosed her with sacroiliac joint dysfunction with muscle imbalance, continued her prescription for Vioxx, and referred her to physical therapy. (Tr. 132.) Krontz saw Dr. Laidlaw again in September 2003, and Dr. Laidlaw added L5 spondylosis to her prior diagnosis. (Tr. 125-30.) On September 29, 2003, Dr. Laidlaw completed a medical source statement on Krontz's behalf, opining that Krontz could lift less than ten pounds; required a hand-held assistive device for ambulation; must alternate between sitting and standing; was limited in pushing and pulling; must never climb, balance, kneel, crouch, or crawl; and had upper extremity manipulative limitations. (Tr. 440-43.)

In November 2003, Krontz was evaluated by a physical therapist, who opined that Krontz's signs and symptoms were consistent with potential low back pain of a mechanical

4

nature. (Tr. 144-45.) The therapist also documented that Krontz demonstrated "several potential yellow flags in regard to her behaviors and behavior to pain" and that she gave some conflicting reports regarding her symptoms. (Tr. 145.) Krontz was eventually terminated due to noncompliance with her scheduled appointments. (Tr. 150, 152.)

Krontz returned to Dr. Laidlaw in January 2004, and she underwent an MRI, the results of which showed bilateral L5 spondylosis with subtle spondylolisthesis and other lumbar changes. (Tr. 103, 125-27.) In April 2004, after examining the results of the MRI, Dr. Laidlaw added a diagnosis of mild low lumbar facet arthropathy to her prior diagnoses. (Tr. 123-24.) She discussed with Krontz the possibility of a steroid injection and encouraged her to resume physical therapy. (Tr. 124.)

On June 1, 2004, Dr. Saadat Abbasi, a state agency physician, reviewed Krontz's record. (Tr. 105-12.) He opined that she could frequently lift twenty pounds and occasionally lift ten pounds; stand or walk six hours and sit six hours in an eight-hour workday; perform unlimited pushing or pulling; and occasionally climb, balance, stoop, kneel, crouch, or crawl. (Tr. 106-07.)

On June 23, 2004, Dr. Taylor completed a medical source statement on Krontz's behalf. (Tr. 113-26.) He opined that Krontz could lift less than ten pounds; required a hand-held assistive device to ambulate; must alternate between sitting and standing; was limited in pushing and pulling and upper extremity manipulation; and must never climb, balance, kneel, crouch, or crawl. (Tr. 114-15.) He cited clinical findings of back and hip pain, left arm nerve damage, degenerative disk disease, osteoarthritis, spondylosis, and fibromyalgia in support of his opinion. (Tr. 115.)

Krontz returned to Dr. Laidlaw in August 2004. (Tr. 120-22.) Dr. Laidlaw affirmed her

5

prior diagnoses but noted in addition that Krontz met sixteen of eighteen tender points for fibromyalgia and that there was "significant functional overlay," observing that her symptoms were not well defined. (Tr. 121.) She ordered additional testing concerning fibromyalgia and again referred her to physical therapy. (Tr. 121.) Krontz visited Dr. Laidlaw again in September, and she referred Krontz for steriod injections to her sacroiliac and facet joints. (Tr. 117-18.) She also documented a possible diagnosis of fibromyalgia and suggested a referral to a rheumotologist. (Tr. 188.)

Krontz attended twelve sessions of physical therapy between September and November 2004, but was ultimately terminated due to noncompliance with her appointments. (Tr. 160.)

In October 2004, Dr. Taylor noted that although Krontz complained of right upper quadrant abdominal pain, two weeks later she complained of left upper quadrant abdominal pain. (Tr. 176, 178.) On December 15, 2004, Dr. Taylor completed a "Multiple Impairment Questionnaire" on Krontz's behalf, reflecting that since January 2003 he saw Krontz "when needed" and that Krontz was "unable to work." (Tr. 134-41.) He assigned her several diagnoses, including degenerative disc disease and fibromyalgia of the neck and shoulder; he also reflected that Krontz had "nerve damage" and carpal tunnel syndrome in her left arm. (Tr. 134, 137.)

Dr. Taylor further opined in the Questionnaire that in an eight-hour workday Krontz could sit for no more than one hour and stand or walk for no more than one hour. (Tr. 136.) He reported that Krontz could lift no more than five pounds occasionally; never carry any weight; and had marked deficits with grasping and twisting objects and reaching, and moderate deficits with fine finger manipulation. (Tr. 137-38.) Dr. Taylor further opined that Krontz would need to take thirty-minute rest breaks every thirty minutes; would miss work more than three times a

6

month; and could not push, pull, kneel, bend, stoop, or work at heights. (Tr. 139-40.)

In August 2005, Dr. Taylor noted that Krontz was "doing well" and that Wellbutrin seemed to help her mood. (Tr. 170.) In January 2006, Krontz complained of right knee pain with no apparent injury. (Tr. 293.) In May 2006, she underwent an MRI of her right knee, the results of which showed no evidence of a meniscal tear but did show a small focal of chondromalacia and a small fissure within the medial patellar cartilage. (Tr. 199.) She was prescribed medication. (Tr. 293.)

In October 2006, Krontz was evaluated by Dr. Steven Schrock, a family practitioner, for low back pain, left forearm pain, and depression. (Tr. 482-83.) She described her low back pain as intermittent, moderate, and dull. (Tr. 482.) Dr. Schrock noted that she had a normal gait, some mild pain with palpation in her right lumbar area, and full strength of her left hand. (Tr. 483.) He thought that she was doing well on her medication for depression. (Tr. 483.) In December 2006, Krontz presented to Dr. Schrock with similar complaints, and he essentially reiterated his October findings. (Tr. 476-78.) That same month, Krontz underwent a neurometrics study for her left arm symptoms, but it revealed no evidence of carpal tunnel syndrome. (Tr. 475, 497-98.)

In January 2007, Krontz saw Dr. Ben Nelson at North Central Orthopedics for evaluation of her low back pain. (Tr. 473.) X-rays revealed an S5-S1 spondylosis with right-sided sacralization of L5 and traction osteophytes at multiple levels in her low back. (Tr. 473.) He opined that her back pain was mechanical in nature and gave her exercises to increase her strength. (Tr. 473.) The next month, she returned to Dr. Nelson for intermittent left hand and arm pain, and he prescribed anti-inflammatories. (Tr. 469-70.)

7

In April 2007, Krontz complained of neck pain to Dr. Nelson after a fall. (Tr. 491.) He noted that she had some tenderness and limitation on the left side of her neck, but that her upper extremity strength and sensation were normal; he diagnosed her with a cervical strain. (Tr. 491.) Two months later, Krontz returned to Dr. Nelson, complaining of low back, left shoulder, and right knee pain. (Tr. 465, 490.) Her right knee had normal range of motion with no instability or tenderness. (Tr. 490.) He noted that her current medication regime helped her low back pain and recommended she continue it. (Tr. 465.) A subsequent MRI of her lumbar spine was unremarkable. (Tr. 479.)

In August 2008, Krontz saw Ms. Kay Jones, a nurse practitioner, for left shoulder and neck pain. (Tr. 508-10.) She had normal gait, station, and posture; and full range of motion with normal stability, strength, and tone. (Tr. 509.) Ms. Jones prescribed several anti-inflammatories for her symptoms. (Tr. 509.) The next month, Krontz was seen by Ms. Jones for right knee pain after she tripped over a dog. (Tr. 506.) She had an antalgic gait favoring her right leg and some patellar tenderness in her right knee. (Tr. 507.)

In April 2009, Krontz returned for a recheck of her back and knee problems and to refill her prescriptions. (Tr. 501.) She had normal gait, station, and posture; some bilateral lower paraspinal muscle tenderness; mildly-reduced range of motion; and normal muscle strength and tone. (Tr. 501.)

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### A. *The Law*

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process,

9

requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The ALJ's Decision

On July 23, 2009, the ALJ rendered his decision. (Tr. 376-83.) He found at step one of the five-step analysis that Krontz had not engaged in substantial gainful activity since her alleged onset date, and at step two that her degenerative disk disease, spondylosis, and fibromyalgia were severe impairments. (Tr. 378.) At step three, the ALJ determined that Krontz's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 379.) Before proceeding to step four, the ALJ determined that Krontz's testimony of debilitating limitations was not credible to the extent its was inconsistent with the following RFC:

> [T]he claimant has the residual functional capacity to perform light work . . .

---

[4] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

10

except that she can occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 379-80.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that Krontz could perform her past relevant work as a cashier as it is generally performed in the national economy and as a press operator as she actually performed it. (Tr. 382.) In addition, the ALJ concluded at step five that Krontz could perform a significant number of other jobs within the economy, including fast food worker, plastic machine operator, and packager. (Tr. 383.) Therefore, Krontz's claims for DIB and SSI were denied. (Tr. 383.)

*C. The ALJ's Consideration of the Medical Source Statements of Record Will Be Remanded*

Here, in denying Krontz DIB and SSI, the ALJ mischaracterized material evidence from Krontz's treating physicians, Dr. Taylor and Dr. Laidlaw. Because the Court cannot be certain that all of these mischaracterizations amount to mere harmless error, the Commissioner's final decision will be remanded for reconsideration of the medical source opinions of record.

The Seventh Circuit has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870; *see also* 20 C.F.R. §§ 404.1527(d)(2); 416.1527(d)(2). However, this principle is not absolute, as "a treating physician's opinion regarding the nature and severity of a medical condition is [only] entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at 870; *see* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002).

In the event the treating physician's opinion is not well supported or is inconsistent with

11

other substantial evidence, the Commissioner must apply the following factors to determine the proper weight to give the opinion: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) any other factors brought to the attention of the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d); *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996).

Of course, a claimant is not entitled to DIB or SSI simply because her treating physician states that she is "unable to work" or "disabled", as the determination of disability is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Clifford*, 227 F.3d at 870; *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). Regardless of the outcome, the Commissioner must always give good reasons for the weight ultimately applied to the treating source's opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Clifford*, 227 F.3d at 870.

Here, the ALJ ultimately discounted the rather significant limitations opined by Krontz's treating family practitioner, Dr. Taylor, and her treating specialist in physical medicine and rehabilitation, Dr. Laidlaw, and instead adopted the less-restrictive limitations opined by the reviewing state agency physicians. However, in doing so, the ALJ mischaracterized the record in several material respects, and as a result, based his conclusion on a flawed premise.

First, the ALJ discounted the June 2004 and December 2004 medical source statements from Dr. Taylor because, among other things, "absolutely no treatment records from him were submitted to be a part of the record." (Tr. 382.) However, Dr. Taylor's treatment notes from June 23, 2003, to August 8, 2005, were indeed included in the record (Tr. 168-97), a fact which

12

was expressly acknowledged in the Commissioner's 2006 decision denying Krontz disability. (Tr. 21 ("M. Reed Taylor M.D. has been the claimant's treating physician since January 8, 2003, and her treatment notes for the period June 23, 2003 through August 8, 2005 are in Exhibit 8F.")); *see generally Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) (opining that when probative evidence is left unmentioned by the ALJ, the court is left to wonder whether it was even considered). Therefore, at least one of the ALJ's reasons for discounting Dr. Taylor's limitations is baseless.[5] *See Scott v. Astrue*, __ F.3d __, 2011 WL 3252799, at *5 (7th Cir. Aug. 1, 2011) ("An ALJ must offer good reasons for discounting the opinion of a treating physician.") (citations and internal quotation marks omitted).

Of course, in the end, an error by the ALJ is harmless if it "would not affect the outcome of this case." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). It appears unlikely that the ALJ's decision to discount Dr. Taylor's limitations would change solely because of his oversight concerning Dr. Taylor's treatment records, considering that the ALJ cited at least two other reasons for discounting Dr. Taylor's opinion—an inconsistency between Dr. Taylor's report that Krontz was in extreme pain and his prescription of only Ibuprofen or Naproxen, and Dr. Taylor's citing carpal tunnel syndrome as a reason for limiting Krontz's upper extremity restrictions when an EMG and nerve conduction studies were normal.

Nevertheless, the same cannot be said for the ALJ's second, and more significant, mischaracterization. After discounting Dr. Taylor's medical source statements, the ALJ stated

---

[5] In addition, although a less significant mischaracterization, the ALJ recited that "[n]o physician has prescribed the use of an assistive device" for Krontz. (Tr. 381.) Both Dr. Taylor and Dr. Laidlaw, however, stated in their medical source statements that, at least in 2003 and 2004, a "medically required hand-held assistive device is necessary for ambulation". (Tr. 115, 441.)

that "[t]here are no other treating source medical opinions of record" and "[t]he only other medical source statement comes from the reviewing State Agency Physicians who opined that the claimant could perform light work with occasional postural movements." (Tr. 382.) The ALJ, however, overlooked that the record *also* includes a September 29, 2003, medical source statement from Dr. Laidlaw, Krontz's treating specialist, who observed that Krontz met sixteen of the eighteen triggers points for fibromyalgia and limited her to, among other things, lifting less than ten pounds and alternating between sitting and standing. Thus, Dr. Laidlaw's limitations were less restrictive than those articulated in Dr. Taylor's December 2004 assessment but more restrictive than those assigned by the reviewing state agency physicians in June 2004. (Tr. 440-43); *see Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (emphasizing that an ALJ must not ignore evidence which contradicts his opinion, but must evaluate the record fairly); *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) (stating that the ALJ's failure to discuss a physician's report "in its entirety prevents [the] court from tracking the ALJ's reasons for discounting it"); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (stating that "the ALJ's decision must be based upon consideration of all the relevant evidence and that the ALJ must articulate at some minimal level his analysis of the evidence") (internal quotation marks omitted).

Even if there are good reasons for refusing to give Dr. Laidlaw's medical source statement controlling weight, such as an internal inconsistency with her treatment notes or other substantial evidence of record, the ALJ still was required to determine what value the assessment merited. 20 C.F.R. §§ 404.1527(d); 416.927(d); *Scott*, 2011 WL 3252799, at *5 (reiterating that when deciding what weight to assign a non-controlling treating physician's opinion, an ALJ

must consider "the length, nature and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion"). Of course, Dr. Laidlaw is a specialist in physical medicine and rehabilitation, and she treated Krontz six times during their eighteen-month treatment relationship, which took place prior to her DIB date last insured. Therefore, at least some of the relevant factors favor Dr. Laidlaw's assessment. *See Scott*, 2011 WL 3252799, at *5.

Moreover, as courts have observed:

> Fibromyalgia is a mysterious disease; doctors know very little about what causes it or how to treat it. There are no objective medical tests that can confirm the existence of fibromyalgia. Rather, the principal symptoms, which include persistent pain, fatigue, disrupted sleep, stiffness, and numerous tenders spots on the body, are all subjective.

*Allen v. Massanari*, No. 01 C 1045, 2002 WL 398510, at *9 (N.D. Ill. Mar. 14, 2002) (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). Here, if Dr. Laidlaw's limitations were assigned even some weight, the ALJ may arrive at a different RFC, which could lead to a different step four or step five conclusion.

Consequently, it is most prudent, particularly since Krontz is *pro se*, to remand the Commissioner's final decision so that the ALJ can properly evaluate all of the medical source statements of record, including Dr. Laidlaw's, in compliance with 20 C.F.R. §§ 404.1527(d) and 416.927(d) and minimally articulate his analysis of such evidence.[6]

---

[6] While Krontz requests an outright award of benefits rather than a remand of her case for rehearing (Opening Br. 2-3), her request is unavailing, as the record does not "compel[] an award of benefits." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005) ("An award of benefits is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." (internal quotation marks and citation omitted)). Indeed, upon remand, it is entirely possible that the ALJ, after a thorough review of the current record, will conclude that Krontz is not entitled to DIB or SSI under the law.
.

15

## V.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion.  The Clerk is directed to enter a judgment in favor of Krontz and against the Commissioner.

SO ORDERED.

Enter for this 9th day of August, 2011.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge